IN THE CIRCUIT COURT FOR THE STATE OF OREGON
IN AND FOR THE COUNTY OF WASHINGTON

BAC HOME LOANS SERVICING, LP F/K/A )
COUNTRYWIDE HOME LOANS SERVICING )
LP, its successors in interest and/or assigns, )
                                  )
                Plaintiff, )
v. )
                                  )
DOUGLAS HACKETT; TRISH REGAN; )
UNKNOWN HEIRS OF VIVIAN HACKETT; )
CHERYL WARD; TERRIE SALYERS; KING )
CITY CIVIC ASSOCIATION; OREGON )
DEPARTMENT OF HUMAN SERVICES; and )
Occupants of the Premises, )
                                  )
              Defendants. )

No.  **C11-0780CV**

SUMMONS

1.

**TO THE DEFENDANTS:** Douglas Hackett; Trish Regan; Unknown Heirs of Vivian Hackett;

Cheryl Ward; Terrie Salyers; King City Civic Association; Oregon Department of Human Services;

and Occupants of the Premises described in the Complaint.

2.

      You are hereby required to appear and defend the Complaint filed against you in this case

within 30 days from the date of the service of this summons upon you.  If you fail to appear and

defend, the Plaintiff will apply to the court for the relief demanded in the Complaint.

//

SUMMONS - 1



ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

3.

### NOTICE TO DEFENDANTS:
### READ THESE PAPERS CAREFULLY!

A lawsuit has been started against you in the above-entitled court by Plaintiff, BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP. Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

4.

You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days *(or 60 days for Defendant United States or State of Oregon Department of Revenue)* along with the required filing fee. It must be in proper form and have proof of service on the Plaintiff's attorney or, if the Plaintiff does not have an attorney, proof of service on the Plaintiff.

5.

If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

6.

This summons is issued pursuant to ORCP 7.

ROUTH CRABTREE OLSEN, P.S.

By _____

Chris Fowler, OSB # 052544
Attorneys for Plaintiff
13555 SE 36th Street, Ste 300
Bellevue, WA 98006
P: (503) 517-9776

SUMMONS - 2

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## NOTICE

**Pursuant to the Federal Fair Debt Collection Practices Act: If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:**

1. As of the 18th day of February, 2011, the amount necessary to payoff the loan in full is $183,577.67. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write or call Routh Crabtree Olsen, P.S.

2. The creditor to whom the debt is owed is BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP.

3. Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid.

4. If you notify us, within 30 days after receipt of this notice, that you dispute the debt or any part of it, we shall obtain verification of the debt and mail it to you.

5. If you so request within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

I hereby certify that the within is a true copy
of the original summons in the within entitled action.

By: _____

Chris Fowler, OSB #052544
Attorney for Plaintiff

SUMMONS - 3

**ROUTH CRABTREE OLSEN, P.S.**

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1
2
3
4
5
6
7
8

IN THE CIRCUIT COURT FOR THE STATE OF OREGON
IN AND FOR THE COUNTY OF WASHINGTON

9  BAC HOME LOANS SERVICING, LP F/K/A
   COUNTRYWIDE HOME LOANS SERVICING
10 LP, its successors in interest and/or assigns,

11              Plaintiff,
           v.

12 DOUGLAS HACKETT; TRISH REGAN;
13 UNKNOWN HEIRS OF VIVIAN HACKETT;
   CHERYL WARD; TERRIE SALYERS; KING
14 CITY CIVIC ASSOCIATION; OREGON
   DEPARTMENT OF HUMAN SERVICES; and
15 Occupants of the Premises,

16              Defendants.

Case No.  C 1 1 - 0780 C V

COMPLAINT FOR DEED OF TRUST
FORECLOSURE

MONETARY AWARD REQUESTED:
$164,615.38 PLUS
INTEREST, COSTS AND FEES

NOT SUBJECT TO MANDATORY
ARBITRATION

17
18                                          1.

19      Plaintiff, BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP, by

20 and through its counsel of record, Chris Fowler, of the law firm Routh Crabtree Olsen, P.S., files this

21 Complaint for Deed of Trust Foreclosure on the property located at 12421 SW Prince Albert Street,

22 Portland, OR 97224.

23 //

24 //

25 //

26 //

COMPLAINT FOR DEED OF TRUST FORECLOSURE - 1



ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

## I.    VENUE AND JURISDICTION

2

2.

3

This complaint arises out of dealing between the parties with respect to a residential Deed of

4

Trust on the subject real property.  The subject real property is the sole security for the Deed of Trust

5

6

and is situated in Washington County, Oregon.  Both the Plaintiff and the defendants having actual or

7

contingent interest therein, and further for the purpose of foreclosure, the Court has venue and

8

jurisdiction over this proceeding pursuant to ORS 14.040 and ORCP 4F.

9

## II. PROPERTY

10

3.

11

The real property that is subject to above-entitled action is legally described as follows:

12

13

LOT 40, BLOCK 13, KING CITY NO. 5, IN THE CITY OF KING
CITY, COUNTY OF WASHINGTON, STATE OF OREGON BEING
MORE FULLY DESCRIBED IN DEED INSTRUMENT #2007-114283
DATED 10/23/2007 AND RECORDED 10/29/2007 IN
WASHINGTON COUNTY RECORDS.

14

15

16

The real property that is subject to above-entitled action is more commonly known as 12421 SW

17

Prince Albert Street, Portland, OR, 97224, and is hereinafter referred to as the ("Property").

18

## III. PARTIES

19

4.

20

PLAINTIFF'S STATUS:  BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans

21

22

Servicing LP ("Plaintiff") is a foreign corporation and is authorized to bring suit pursuant to ORS

23

14.040(4).

24

//

25

//

26

COMPLAINT FOR DEED OF TRUST FORECLOSURE - 2

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

5.

DEFENDANTS DOUGLAS HACKETT AND TRISH REGAN, AND UNKNOWN HEIRS

OF VIVIAN HACKETT: Douglas Hackett and Trish Regan, as to their 1/2 interest and Vivian

Hackett, as to her 1/2 interest, are grantors of the Deed of Trust secured by the Property, dated March

21, 2008, and recorded on April 22, 2008 in Washington County, Oregon under Auditor's File No.

2008-036382. The Unknown Heirs of Vivian Hackett have or may have an interest in the property,

as to her 1/2 interest, by intestate succession pursuant to ORS 112.015 et seq. True and accurate

copies of the Death Certificate Vivian Hackett and the Deed of Trust are hereto attached as Exhibits

"A" and "B," respectively.

6.

DEFENDANT CHERYL WARD: Defendant, Cheryl Ward, daughter of the deceased,

Vivian Hackett, as to her 1/2 interest, has or may have an interest in the Property by intestate

succession.

7.

DEFENDANT CHERYL WARD: Defendant, Terrie Salyers, daughter of the deceased,

Vivian Hackett, as to her 1/2 interest, has or may have an interest in the Property by intestate

succession.

8.

DEFENDANT KING CITY CIVIC ASSOCIATION: Defendant, King City Civic

Association, has or may have an interest in the property by way of possible unpaid assessments

pursuant to the Declaration recorded on December 14, 2001 in Washington County, Oregon under

Auditor's File No. 2001-130532.

COMPLAINT FOR DEED OF TRUST FORECLOSURE - 3

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

9.

DEFENDANT OREGON DEPARTMENT OF HUMAN SERVICES:  Defendant, Oregon Department of Human Services, has or may have a lien against the property for unpaid medical expenses advanced on behalf of the decedent Vivian Hackett.

10.

DEFENDANT OCCUPANTS OF THE PREMISES:  Defendant, Occupants of the Premises, described in the complaint herein are advised that their interest is inferior, subordinate, and subject to the mortgage lien of Plaintiff.

## IV.  NON-MILITARY STATUS OF DEFENDANTS

11.

To the best Plaintiff's ability, it is unable to determine whether any of the defendants are members of the United States military service as defined by the Servicemembers Civil Relief Act as amended.

## V.  TRANSFER OF ESTATE TO CLAIMING SUCCESSORS

12.

The Unknown Heirs of Vivian Hackett, as to her 1/2 interest, Cheryl Ward, and Terrie Salyers, have or may have an interest in the Property pursuant to ORS 112.025 to ORS 112.055, by intestate succession, the Property not having been devised by will, and no affidavit being filed pursuant to ORS 114.515, Small Estates.

//

//

//

COMPLAINT FOR DEED OF TRUST FORECLOSURE - 4

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## VI. STATEMENT OF FACTS

13.

EXECUTION OF PROMISSORY NOTE:  Within the State of Oregon and for valuable

consideration, on March 21, 2008, Douglas Hackett and Trish Regan made, executed and delivered to

Countrywide Bank, FSB (the "Lender") a promissory note (the "Note") in writing.  A true and accurate

copy of the Note is hereto attached as Exhibit "C."

14.

EXECUTION OF THE DEED OF TRUST:  At the same time and place as the execution and

delivery of the Note, and as part of the same transaction, Douglas Hackett and Trish Regan, as to their

1/2 interest and Vivian Hackett, as to her 1/2 interest, who were the owner of the Property described

above, in order to secure payment of the Note and to secure the performance of the obligations and

covenants of the grantors contained in the Deed of Trust, made, executed and delivered to Mortgage

Electronic Registration Systems, Inc. ("Beneficiary"), a certain instrument, the Deed of Trust, in writing

by which defendant deeded in trust to Beneficiary all the Property.

15.

The Deed of Trust was duly acknowledged in the manner required for recording and on April

22, 2008, was recorded in the official records of Washington County, Oregon.

16.

On or about May 21, 2010 an Assignment of Deed of Trust ("Assignment") was executed by

the Beneficiary of the Deed of Trust in favor of Plaintiff, and was recorded on May 26, 2010 in

Washington County, Oregon under Auditor's File No. 2010-039835.  By this Assignment, the

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Beneficiary assigned, transferred, conveyed, and set over the Note and Deed of Trust to Plaintiff.  A true and accurate copy of the Assignment is hereto attached as Exhibit "D."

17.

PROMISSORY NOTE AND MORTGAGE:  Plaintiff remains the holder of the Note and beneficiary of the Deed of Trust.

## VII. CLAIM FOR RELIEF – JUDICIAL FORECLOSURE

18.

DEFAULT IN PAYMENT, ACCELERATION, AND AMOUNT DUE:  Douglas Hackett and Trish Regan, as to their 1/2 interest and Vivian Hackett, as to her 1/2 interest, the grantors of the Deed of Trust have breached the terms of the Note and Deed of Trust by their failure to make the monthly payment which was due on August 1, 2009, have made no payments on the Note and Deed of Trust since that date, and are in default for the August 1, 2009 payment and each and every monthly payment thereafter due and not paid.  Therefore, the Note and Deed of Trust are in default.  Because of the default, Plaintiff has exercised and hereby exercises the option granted to it in the Note and Deed of Trust to declare the whole of the balance of both principal and interest thereon due and payable.  There is now due and unpaid the principal balance of $164,615.38.  This amount is immediately payable, plus interest at the contract rate of 5.875 % per annum, and subject to change per Paragraphs 2 and 4 of the Note, until paid.  Thus, Plaintiff prays the court enters a judgment, for the unpaid principal balance of $164,615.38, plus interest at the variable Note rate, fees, and costs incurred under the terms of the Note and Deed of Trust.

//

//

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

19.

NO OTHER SUITS OR ACTIONS:  No other suit or action has been instituted or is now pending upon the Note or to foreclose the Deed of Trust.

20.

PLAINTIFF'S LIEN IS SUPERIOR TO DEFENDANTS:  The Deed of Trust is the valid first priority lien on the Property.  The interest and liens of the defendants, and all parties claiming by and through the defendants, should be adjudged subsequent to and inferior to Plaintiff's Deed of Trust, forever foreclosed, and that the court issue an order instructing the Washington County Sheriff to seize and sell the Property at auction in the manner prescribed by law.

21.

COSTS AND ATTORNEYS' FEES:  The terms of the Note and Deed of Trust provide that in the event of any action to collect the Note or to foreclose the Deed of Trust there shall be included in the judgment a reasonable sum for attorneys' fees and litigation costs, together with the cost of title search and including, but not limited to, such other sums advanced under the terms of the Note and Deed of Trust for taxes, assessments, municipal charges, and other items which may constitute liens upon the above-described Property, together with necessary insurance and repairs.

22.

PURCHASER AT SHERIFF'S SALE:  Plaintiff is permitted to become a bidder and purchaser at the sheriff's sale and the purchaser at the sheriff's sale is entitled to immediate possession of the Property and, upon motion of purchaser when the Property is not vacated so that purchaser may take possession, the court should forthwith order the clerk of the court to issue a writ of assistance ordering the sheriff to deliver possession of the Property to the purchaser.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

23.

180-DAY REDEMPTION PERIOD:  The sheriff should be ordered to issue a sheriff's deed for the Property upon the expiration of the 180 day redemption period.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a general judgment of foreclosure from this Court as follows:

24.

JUDGMENT ON THE PROMISSORY NOTE:  That Plaintiff have judgment against the Property in the sum of $164,615.38, together with unpaid interest due and payable as provided in the Note and Deed of Trust, and for additional sums advanced under the terms of the Note and Deed of Trust for taxes, assessments, municipal charges, and other items which may constitute liens upon the Property, together with insurance and repairs, reasonable attorneys' fees and litigation costs, together with the costs of title search and Plaintiff's costs and disbursements herein and that the judgment accrue interest at the 5.875% or variable contract rate of interest subject to change pursuant to Paragraphs 2 and 4 of the Note, or at the legal rate of interest (9.000% per annum), whichever is greater.

25.

SUPERIORITY OF PLAINTIFF'S LIEN AND FORECLOSURE OF DEFENDANTS' RIGHTS:  That Plaintiff's Deed of Trust be declared a valid first lien upon the Property and that by the foreclosure and sale, the rights of each of the defendants and persons claiming by, through, or under them subsequent to the execution of the Deed of Trust, be adjudged inferior and subordinate to Plaintiff's lien and be forever foreclosed except for any statutory right of redemption allowed by law.

26.

FORECLOSURE OF THE PROPERTY:  That the Washington County Sheriff be ordered to

COMPLAINT FOR DEED OF TRUST FORECLOSURE - 8

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

sell the Property in the manner prescribed by law.  That the proceeds thereof be applied first toward the cost of sale, then toward satisfaction of Plaintiff's judgment together with increased interest and such additional amounts as Plaintiff may advance under the terms of the Note and Deed of Trust for taxes, assessments, municipal charges, such other items as may constitute liens upon the Property, amounts advanced for necessary insurance and repairs, and interest thereon from the date of judgment.  The surplus proceeds if any to be deposited with the court clerk to be disbursed to the party or parties who establish the right thereto.

27.

FORECLOSURE OF ALL OTHER INTERESTS/CLAIMS:  That each and every defendant and all persons claiming through or under each and every defendant as purchasers, encumbrances, or otherwise, are forever foreclosed of all interest or claim in the Property except any statutory right of redemption that defendants may have in the Property.

28.

DENIAL OF HOMESTEAD EXEMPTION:  That defendants are not entitled to a homestead exemption as against Plaintiff's Deed of Trust.

29.

180-DAY REDEMPTION PERIOD:  That the Washington County Sheriff be ordered to issue the sheriff's deed for the Property to the purchaser upon the expiration of the 180 day statutory redemption period from the date of the sheriff's sale.

30.

PLAINTIFF ALLOWED RIGHT TO BECOME BIDDER:  That Plaintiff be permitted to become a bidder and purchaser at the foreclosure sale and that the purchaser is entitled to immediate

COMPLAINT FOR DEED OF TRUST FORECLOSURE - 9

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  possession of the Property and, upon motion of purchaser when the Property is not vacated so that

2  purchaser may take possession, the Court should forthwith order the clerk of the court to issue a writ of

3  assistance ordering the sheriff to deliver possession of the Property to the purchaser.

4  Dated this _3/$^{st}$_ day of _January_____, 2011.

5

6                                    ROUTH CRABTREE OLSEN, P.S.

7                          By _____

8                                    Chris Fowler, OSB # 052544
                                     Attorneys for Plaintiff
9                                    13555 SE 36th Street, Ste 300
                                     Bellevue, WA 98006
10                                   P: (503) 517-9776
                                     cfowler@rcolegal.com

11  I hereby certify that the within is
    a true copy of the original Complaint
12  in the within entitled action

13  _____

14  Chris Fowler, OSB #052544

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DEED OF TRUST FORECLOSURE - 10

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**CERTIFICATION OF VITAL RECORD**

OREGON DEPARTMENT OF HUMAN SERVICES
CENTER FOR HEALTH STATISTICS
**CERTIFICATE OF DEATH**

558310
I.D. TAG NO.

136-2009-017833
STATE FILE NUMBER

| Legal Name | First | Middle | Last | Suffix | Death Date |
|---|---|---|---|---|---|
| | Vivian | Fern | Hackett | | July 22, 2009 |

**TO BE COMPLETED BY FUNERAL FACILITY**

| Sex | Age | Social Security Number | County of Death |
|---|---|---|---|
| Female | 79 years | ~~redacted~~ | Multnomah |

| Birthdate | Birthplace | Was Decedent Ever in U.S. Armed Forces? |
|---|---|---|
| January 24, 1930 | Wolf Creek, Montana | No |

Residence: 12421 SW Prince Albert Street — City/Town: King City

| Residence County | State or Foreign Country | Zip Code + 4 | Inside City Limits? |
|---|---|---|---|
| Washington | Oregon | 97224 | Yes |

| Marital Status at Time of Death | Spouse's Name Prior to First Marriage |
|---|---|
| Divorced | |

| Father's Name | Mother's Name Prior to First Marriage |
|---|---|
| Ira Lee Heckathorn | Whilamina Mary Sacht |

| Informant's Name | Telephone Number | Relationship to Decedent | Mailing Address |
|---|---|---|---|
| Cheryl Ward | Not Available | Daughter | 2939 Carriage Way, West-Linn, OR 97068 |

| Place of Death | Facility Name |
|---|---|
| Hospice Facility | Legacy Hopewell House Hospice |

| Location of Death | City/Town or Location of Death | State | Zip Code + 4 |
|---|---|---|---|
| 6171 SW Capitol Highway | Portland | Oregon | 97239-2649 |

| Method of Disposition | Place of Disposition | Location (City/Town and State) |
|---|---|---|
| Cremation | Cascade Cremation Center | Tualatin, Oregon |

Name and Complete Address of Funeral Facility
Crown Memorial Center - Cremation & Burial (Tualatin)  8970 SW Tualatin-Sherwood Road, Tualatin, Oregon 97062

| Date of Disposition | Funeral Director's Signature | Electronically Signed | OR License Number |
|---|---|---|---|
| TBD | /S/ Tara S Tjaden | | FS-0527 |

| Registrar's Signature | Date Received | Local File Number |
|---|---|---|
| /S/ Lila Wickham | August 05, 2009 | 003403 |

Amendment

**TO BE COMPLETED BY MEDICAL CERTIFIER**

| Was case referred to Medical Examiner? | Autopsy? | Were autopsy findings available to complete the cause of death? | Time of Death |
|---|---|---|---|
| No | No | | 1505 |

**CAUSE OF DEATH**

| | | Approximate Interval: Onset to Death |
|---|---|---|
| IMMEDIATE CAUSE ↓  a. | Ovarian cancer | months |
| Due to (or as a consequence of) ↓  b. | | |
| Due to (or as a consequence of) ↓  c. | | |
| Due to (or as a consequence of) ↓  d. | | |

Other significant conditions contributing to death

| Manner of Death | If Female | Did tobacco use contribute to death? |
|---|---|---|
| Natural | | Unknown |

| Date of Injury | Time of Injury | Place of Injury | Injury at Work? |
|---|---|---|---|
| | | | |

Location of Injury

| Describe how injury occurred | If transportation injury, specify. |
|---|---|

| Name and Address of Certifier | |
|---|---|
| Jocelyn Cameron White | 6171 SW Capitol Highway, Portland, Oregon 97239-2649 |

| Name and Title of Attending Physician if Other than Certifier | Date Signed |
|---|---|
| | July 29, 2009 |

| Medical Certifier | Title of Certifier | License Number |
|---|---|---|
| /S/ Jocelyn Cameron White | M.D. | MD15704 |

Amendment

*20110102364*

45-2CC   (01/06)

I CERTIFY THAT THIS IS A TRUE, FULL AND CORRECT COPY OF THE ORIGINAL CERTIFICATE ON FILE OR ON THE VITAL
RECORD FACTS ON FILE IN THE VITAL RECORDS UNIT OF THE OREGON CENTER FOR HEALTH STATISTICS.

DATE ISSUED: January 12, 2011

THIS COPY IS NOT VALID WITHOUT INTAGLIO STATE SEAL AND BORDER.

JENNIFER A. WOODWARD, Ph.D.
STATE REGISTRAR

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



EXHIBIT ___ 4

Until a change is requested all tax statements shall be sent to the following address.
TAX DEPARTMENT SV3-24

450 American Street
Simi Valley CA, 93065

Recording Requested By & Return To
Chicago Title ServiceLink Division
400 Corporation Drive
Aliquippa, PA 15001

Prepared By:
SUSAN STITT
TAX ACCOUNT NUMBER
2s110cc16000
True and Actual Consideration is:
$165,000.00

Washington County, Oregon    **2008-036382**
04/22/2008 02:38:17 PM
D-M          Cnt=1 Stn=12 8 PFEIFER
$125.00 $5.00 $11.00 - Total = $138.00

L Richard Hobernicht, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.
Richard Hobernicht, Director of Assessment and Taxation, Ex-Officio County Clerk

[Space Above This Line For Recording Data]

1619381                                    00019038836903008
[Escrow/Closing #]                              [Doc ID #]

# DEED OF TRUST

Mortgage Electronic Registration Systems, Inc. (MERS) is the Grantee of this Security Instrument
MIN 1001337-0003004183-7

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated MARCH 21, 2008 , together with all Riders to this document.
(B) "Borrower" is

DOUGLAS HACKETT, AND TRISH REGAN, AS TO THEIR 1/2 INTEREST AND, AND VIVIAN HACKETT, AS TO HER 1/2 INTEREST.

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE BANK, FSB
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(D) "Trustee" is
RECON TRUST COMPANY, N. A.
225 WEST HILLCREST DRIVE, MSN TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MARCH 21, 2008 . The Note states that Borrower owes Lender
ONE HUNDRED SIXTY FIVE THOUSAND and 00/100

Dollars (U.S. $165,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 01, 2038 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

OREGON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

M Deed of Trust-OR
2006A-OR (06/07)(d/l)                     Page 1 of 9                        Form 3038 1/01





Description: Washington,OR Document-Year.DocID 2008.36382 Page: 1 of 24
Order: 2 Comment:

**EXHIBIT B**

DOC ID #: 00019038836903008

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider   ☐ Condominium Rider              ☒ Second Home Rider
☐ Balloon Rider           ☒ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider          ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY               of          WASHINGTON              :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of

12421 SW PRINCE ALBERT ST, PORTLAND
[Street/City]

Oregon 97224-2460 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

## SCHEDULE C

### LEGAL DESCRIPTION

All that certain parcel of land situated in the City of King City, County of Washington, State of Oregon, being known and designated as Lot 40, Block 13, King City No. 5, in the City of King City, County of Washington, State of Oregon being more fully described in Deed Instrument # 2007-114283 Dated 10/23/2007 and Recorded 10/29/2007 in Washington County Records.

DOC ID #: 0001903883693008

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and

Description: Washington,OR Document-Year.DocID 2008.36382 Page: 4 of 24
Order: 2 Comment:

DOC ID #: 0001903883603008

Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

DOC ID #: 0001903883690308

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

M Deed of Trust-OR
2008A-OR (08/07)                                    Page 5 of 9                                    Form 3038 1/01

DOC ID #: 0001903836903008

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

M Deed of Trust-OR
2008A-OR (08/07)                                           Page 8 of 9                                          Form 3038 1/01

DOC ID #: 00019038836903008

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.   Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18.   Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.   Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.   Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.   Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.   Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable

DOC ID #: 00019038836903008

Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. Protective Advances. This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. Required Evidence of Property Insurance.

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchase by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Douglas Hackett_ _____ (Seal)
DOUGLAS HACKETT                         -Borrower

_Trish Regan_ _____ (Seal)
TRISH REGAN                            -Borrower

_____ (Seal)
VIVIAN HACKETT                         -Borrower

_____ (Seal)
                                       -Borrower

M Deed of Trust-OR
2006A-OR (08/07)                    Page 8 of 9                    Form 3038 1/01

Description: Washington,OR Document-Year.DocID 2008.36382 Page: 9 of 24
Order: 2 Comment:

DOC ID #: 0001903883690300B

Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. **Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. **Required Evidence of Property Insurance.**

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchase by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DOUGLAS HACKETT                        -Borrower

_____ (Seal)
TRISH REGAN                            -Borrower

*Vivian Hackett* _____ (Seal)
VIVIAN HACKETT                         -Borrower

_____ (Seal)
                                       -Borrower

Description: Washington,OR Document-Year.DocID 2008.36382 Page: 10 of 24
Order: 2 Comment:

DOC ID #: 00019038836903008

STATE OF OREGON, HAWAII
On this ____ 24th ____ day of ____ MARCH ____ , ____ 2008 ____ County ss: Honolon, personally appeared the
above named ____

DOUGLAS HACKET And

TRISH REGAL

the foregoing instrument to be his/her/their voluntary act and deed.

_____ and acknowledged

My Commission Expires: 07/07/2011 ____ Before me: ____ ROSEMARY SCHATZLEIN

(Official Seal)

Notary Public for Oregon HAWAII
ROSEMARY SCHATZLEIN

ROSEMARY SCHATZLEIN
Notary Public
State of Hawaii

Description: Washington,OR Document-Year.DocID 2008.36382 Page: 11 of 24
Order: 2 Comment:

DOC ID #: 00019038836903008

STATE OF OREGON,                                        WASHINGTON          County ss:
  On this _____26_____ day of ___MARCH___ ____2008____ , personally appeared the
above named ___VIVIAN HACKETT_____

_____

_____

_____

_____ and acknowledged
the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: _10 - 22-2008_____   Before me: _PAUL B. CRAIG_____

(Official Seal)

                                    _____
                                    Notary Public for Oregon

OFFICIAL SEAL
PAUL B. CRAIG
NOTARY PUBLIC-OREGON
COMMISSION NO. 385507
MY COMMISSION EXPIRES OCTOBER 22, 2008

M Deed of Trust-OR
2008A-OR (05/07)                    Page 9 of 9                        Form 3038 1/01

Description: Washington,OR Document-Year.DocID 2008.36382 Page: 12 of 24
Order: 2 Comment:

# PLANNED UNIT DEVELOPMENT RIDER

1619381                         00019038836903008
[Escrow/Closing #]              [Doc ID #]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-FIRST        day of
MARCH, 2008      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE BANK, FSB

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

12421 SW PRINCE ALBERT ST
PORTLAND, OR 97224-2460
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such
parcels and certain common areas and facilities, as described in

THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
KING CITY

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.    PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent
Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument
or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or
regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

B.    Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which
provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by
fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to,
earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3
for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property;
and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is
deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by
the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss
to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby
assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security
Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Planned Unit Development Rider
2007R-XX (09/07)(d/i)                          Page 1 of 2





Description: Washington,OR Document-Year.DocID 2008.36382 Page: 13 of 24
Order: 2 Comment:

DOC ID #: 00019038836903008

C.   Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D.   Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E.   Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F.   Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
DOUGLAS HACKETT                 - Borrower

_____ (Seal)
TRISH REGAN                     - Borrower

_____ (Seal)
VIVIAN HACKETT                  - Borrower

_____ (Seal)
                                - Borrower

Planned Unit Development Rider
2007R-XX (09/07)          Page 2 of 2

DOC ID #: 00019038836903008

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

| | |
|---|---|
| _____ | ____ (Seal) |
| DOUGLAS HACKETT | - Borrower |

| | |
|---|---|
| _____ | ____ (Seal) |
| TRISH REGAN | - Borrower |

| | |
|---|---|
| *Vivian Hackett* | ____ (Seal) |
| VIVIAN HACKETT | - Borrower |

| | |
|---|---|
| _____ | ____ (Seal) |
| | - Borrower |

Planned Unit Development Rider
2007R-XX (03/07)                    Page 2 of 2

# SECOND HOME RIDER

After Recording Return To:
JANE DOCMAN
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:
2s110cc16000

Prepared By:
SUSAN STITT

1619381              00019038836903008
[Escrow/Closing #]         [Doc ID #]

THIS SECOND HOME RIDER is made this TWENTY-FIRST        day of
MARCH, 2008     , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to
COUNTRYWIDE BANK, FSB

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"),
which is located at:

12421 SW PRINCE ALBERT ST
PORTLAND, OR 97224-2460
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further
covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:
   6.    Occupancy. Borrower shall occupy, and shall only use, the Property as Borrower's second home.
Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times,
and shall not subject the Property to any timesharing or other shared ownership arrangement or to any
rental pool or agreement that requires Borrower either to rent the Property or give a management firm
or any other person any control over the occupancy or use of the Property.

MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
• CONV/VA Second Home Rider
2365R-XX (02/07)(d/i)                    Page 1 of 2                    Form 3890 1/01





DOC ID #: 00019038836903008

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)
DOUGLAS HACKETT                          – Borrower

_____ (Seal)
TRISH REGAN                              – Borrower

_____ (Seal)
VIVIAN HACKETT                           – Borrower

_____ (Seal)
                                         – Borrower

• CONV/VA Second Home Rider
2365R-XX (02/07)            Page 2 of 2            Form 3890 1/01

DOC ID #: 00019038836903008

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)
DOUGLAS HACKETT                                  – Borrower


_____ (Seal)
TRISH REGAN                                      – Borrower


_____ (Seal)
VIVIAN HACKETT                                   – Borrower


_____ (Seal)
                                                 – Borrower

• CONV/VA Second Home Rider
2385R-XX (02/07)                    Page 2 of 2                    Form 3890 1/01

Description: Washington,OR Document-Year.DocID 2008.36382 Page: 18 of 24
Order: 2 Comment:

# FIXED/ADJUSTABLE RATE RIDER

**(LIBOR One-Year Index (As Published In *The Wall Street Journal*)—Rate Caps—
Ten-Year Interest-Only Period)**

1619381                    00019038836903008
[Escrow/Closing #]          [Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-FIRST        day of
MARCH, 2008       , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE BANK, FSB

("Lender") of the same date and covering the property described in the Security Instrument and located at:

12421 SW PRINCE ALBERT ST
PORTLAND, OR 97224-2460
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY
ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of     5.875 %. The Note also provides for a
change in the initial fixed rate to an adjustable interest rate, as follows:

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR—
Ten-Year Interest-Only Period—Single Family—Fannie Mae Uniform Instrument**

10 Year Interest-Only Period Fixed/Adjustable Rate LIBOR Rider
1E872-XX (12/07)(d/i)                    Page 1 of 5                    Form 3153 2/06




DOC ID #: 00019038836903008

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)   Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of APRIL, 2013        , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B)   The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUART percentage points (    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR—**
**Ten-Year Interest-Only Period—**Single Family—**Fannie Mae Uniform Instrument**

10 Year Interest-Only Period Fixed/Adjustable Rate LIBOR Rider
1E872-XX (12/07)                          Page 2 of 5                          Form 3153 2/06

*Description: Washington,OR Document-Year.DocID 2008.36382 Page: 20 of 24*
*Order: 2 Comment:*

DOC ID #: 00019038836903008

**(D)     Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   10.875 % or less than   2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   10.875 %.

**(E)     Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)     Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G)     Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**B.     TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.     Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR—**
**Ten-Year Interest-Only Period**—Single Family—**Fannie Mae Uniform Instrument**

10 Year Interest-Only Period Fixed/Adjustable Rate LIBOR Rider
1E872-XX (12/07)                              Page 3 of 5                              Form 3153 2/06

Description: Washington,OR Document-Year.DocID 2008.36382 Page: 21 of 24
Order: 2 Comment:

DOC ID #: 00019038836903008

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.       When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR—
Ten-Year Interest-Only Period—Single Family—Fannie Mae Uniform Instrument**

10 Year Interest-Only Period Fixed/Adjustable Rate LIBOR Rider
1E872-XX (12/07)                                        Page 4 of 5                                        Form 3153 2/06

Description: Washington,OR Document-Year.DocID 2008.36382 Page: 22 of 24
Order: 2 Comment:

DOC ID #: 00019038836903008

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
DOUGLAS HACKETT                                            - Borrower

_____ (Seal)
TRISH REGAN                                               - Borrower

_____ (Seal)
VIVIAN HACKETT                                            - Borrower

_____ (Seal)
                                                          - Borrower

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR—Ten-Year Interest-Only Period**—Single Family—**Fannie Mae Uniform Instrument**

10 Year Interest-Only Period Fixed/Adjustable Rate LIBOR Rider
1E872-XX (12/07)                    Page 5 of 5                    Form 3153  2/06

DOC ID #: 00019038836904008

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
DOUGLAS HACKETT                                                  - Borrower

_____ (Seal)
TRISH REGAN                                                         - Borrower

_____ (Seal)
VIVIAN HACKETT                                                    - Borrower

_____ (Seal)
                                                                        - Borrower

MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR—
Ten-Year Interest-Only Period—Single Family—Fannie Mae Uniform Instrument

10 Year Interest-Only Period Fixed/Adjustable Rate LIBOR Rider
1E872-XX (12/07)                      Page 5 of 5                      Form 3153 2/06

Mar 24 08 08:54p     Rosen    y Schatzlein       808 329  849          p.22

Prepared by: SUSAN STITT

LOAN #: 190388369

# INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
## (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
## Rate Caps – 10 Year Interest Only Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE
TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS
NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE I MUST PAY.

| MARCH 21, 2008 | DIAMOND BAR | CALIFORNIA |
|:---:|:---:|:---:|
| [Date] | [City] | [State] |

12421 SW PRINCE ALBERT ST, PORTLAND, OR 97224-2460
[Property Address]

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $165,000.00        (this amount is called "Principal"),
plus interest, to the order of Lender. Lender is
COUNTRYWIDE BANK, FSB

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to
receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    5.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default
described in Section 7(B) of this Note.

## 3.    PAYMENTS

### (A)    Time and Place of Payments

I will make a payment on the first day of every month, beginning on  MAY 01, 2008        . Before the First
Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX—
10 Year Interest Only Period—Single Family—Fannie Mae Uniform Instrument

10 Year Interest-Only Period LIBOR ARM Note
1E847-XX (09/07)(d/i)                       Page 1 of 6                        Form 3535 8/05 (rev. 9/08)





EXHIBIT_____ C

LOAN #: 190388369

the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal.   If, on APRIL 01, 2038     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

   (B)     Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 807.81         until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

   (C)     Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.     ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

   (A)     Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of APRIL, 2013     , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

   (B)     The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   (C)     Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER     percentage points (   2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal

10 Year Interest-Only Period LIBOR ARM Note
1E847-XX (09/07)                    Page 2 of 6                    Form 3535  8/05 (rev. 9/06)

LOAN #: 190388369

and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

### (D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   10.875 % or less than   2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   10.875 %.

### (E)   Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)   Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G)   Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

LOAN #: 190388369

### 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)   Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B)   Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)   No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

LOAN #: 190388369

11.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)    Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)    When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Mar 24 08 08:56p    Rosem● d Schatzlein    808 329●49    p.27

LOAN #: 190388369

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DOUGLAS HACKETT                   - Borrower

_____ (Seal)
TRISH REGAN                       - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

*[Sign Original Only]*

S
31

AFTER RECORDING RETURN TO:

**Foreclosure Department**
**RECONTRUST COMPANY, N.A.**
**1800 Tapo Canyon Rd., CA6-914-01-94**
**SIMI VALLEY, CA 93063**
TS No. 10 -0060664

Washington County, Oregon
05/28/2010 01:15:03 PM    **2010-039835**
D-MA      Cnt=1  Stn=7  K GRUNEWALD
$5.00 $5.00 $11.00 $15.00 - Total = $38.00

0148527620100039835001001

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk



### ASSIGNMENT OF DEED OF TRUST

For Valuable Consideration, the undersigned as Beneficiary, hereby grants, conveys, assigns, and transfers to BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, C/O BAC HOME LOANS SERVICING, LP, 400 COUNTRYWIDE WAY SV-35, SIMI VALLEY, CA 93065, all beneficial interest under that certain Deed of Trust, dated 03/21/2008, executed by DOUGLAS HACKETT,  AND  TRISH REGAN, AS TO THEIR 1/2 INTEREST AND VIVIAN HACKETT AS TO HER 1/2 INTEREST, Grantor(s), to RECON TRUST COMPANY, N.A., Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, as Beneficiary, recorded on 04/22/2008 as Recorder's fee/file/instrument/microfilm/reception number 2008-036382, Records of Washington County, Oregon, describing land. There in: as more fully described in said Deed of Trust.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated      MAY 2 1                    20

**Mortgage Electronic Registration Systems**

State of _____ **CALIFORNIA** _____ )
                                              ) ss
County of _____ **VENTURA** _____ )

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC

By: _____

**CHRISTINA BALANDRAN** Assistant Secretary

On _____ MAY 2 1 2010 _____, before me, _____ E. L. Howard _____, notary public, personally appeared _____ CHRISTINA BALANDRAN _____ **\*\*** , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**\*\*** *Assistant Secretary*
WITNESS my hand and official seal.

E. L. Howard

Notary Public in and for the State of _____ **CALIFORNIA**
Residing at _____ **VENTURA**
My Commission Expires: _____ **AUG 2 1  2010**
E. L. Howard

E. L. HOWARD
Commission # 1689188
Notary Public - California
Ventura County
My Comm. Expires Aug 21, 2010

**EXHIBIT** _____ D

